## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **TIFFENII S. MUMPHREY** | § | |
| | § | |
| | § | |
| **Plaintiff** | § | |
| | § | **CASE NO.  2:05-CV-413** |
| **vs.** | § | |
| | § | |
| **TEXAS COLLEGE** | § | |
| | § | |
| **Defendant** | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Texas College's Renewed Motion for Judgment as a Matter of Law (Docket No. 106) and Plaintiff Tiffenii S. Mumphrey's ("Mumphrey") Motion for Award of Attorney's Fees (Docket No. 103).  For the foregoing reasons, the Court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.

### BACKGROUND

On August 31, 2005, Mumphrey filed suit against Texas College (the "College") pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e, et. seq.), alleging sex discrimination that led to a hostile work environment and retaliation.  In addition, Mumphrey brought state law claims for intentional infliction of emotional distress as well as negligent hiring, supervision, and retention.

Mumphrey was hired as the College's public relations coordinator on August 1, 2003.  In Mumphrey's engagement letter, which Mumphrey acknowledged in writing, she was notified that her employment was at-will.  John Matthews, Interim Vice President for Student Affairs at the

College, made inappropriate remarks to Mumphrey on multiple occasions.  Mumphrey filed a complaint in November of 2003, and Matthews was terminated on December 30, 2003.  After Matthews was fired, Mumphrey remained an employee of the College until she was terminated in May of 2004.  Mumphrey argued she was terminated in retaliation for her complaint against Matthews.  The College insisted that she was terminated due to a reduction in force necessitated by the College's financial condition.

On July 26, 2006, the College filed a motion for summary judgment.  The Court granted the motion with respect to Mumphrey's hostile work environment claim, negligent hiring claim, and intentional infliction of emotional distress claim, and denied the motion with respect to the retaliation claim.  On November 13, 2006, a jury heard evidence on the retaliation claim. Throughout trial, the College made the appropriate motions for judgment as a matter of law. The Court denied the motions, but without prejudice to the College's right to renew the motions.  On November 14, 2006, the jury returned a verdict for Mumphrey and awarded damages of $1100.00. This figure represents approximately one half of Mumphrey's monthly salary.  Following the verdict, Mumphrey filed this motion for attorneys' fees in excess of $95,000.00, and the College renewed its motion for judgment as a matter of law.

## MOTION FOR JUDGMENT AS A MATTER OF LAW

### *Applicable Law*

It is undisputed that the College met the procedural requirements for filing this renewed motion for judgment as a matter of law.  *See* FED. R. CIV. P. 50(b).  A renewed motion for judgment as a matter of law cannot assert a new ground not asserted in the motion made at the close of the evidence.  *Morante v. Am. Gen. Fin. Ctr.*, 157 F.3d 1006, 1010 (5th Cir. 1998).  The grounds for the

current motion are based entirely on the grounds raised in the College's previous motion.

A motion for judgment as a matter of law should be granted if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a). The jury's verdict is afforded great deference, but a post-judgment motion for judgment as a matter of law should be granted when "'the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict.'" *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004) (quoting *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 392 (5th Cir. 2000)). In reviewing the sufficiency of the evidence, the Court considers all of the evidence, "not just that evidence which supports the non-movant's case–but in the light and with all reasonable inferences most favorable to the party opposed to the motion." *Greenwood v. Societe Francaise De.*, 111 F.3d 1239, 1245–46 (5th Cir. 1997). A mere scintilla of evidence is not sufficient to present a question for the jury. *Id*. (citing *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc)). In addition, a plaintiff's subjective belief "that his discharge was the result of . . . discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate non-discriminatory reason for his discharge." *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246 (5th Cir. 1985) (citing *Elliott v. Group. Med. & Surgical Serv.*, 714 F.2d 556, 564 n.9 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215 (1984)).

Mumphrey brought her retaliation claim under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e, et. seq.). Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing

under this subchapter." 42 U.S.C. § 2000e-3(a).  In order to prevail on a claim under Title VII, the plaintiff must make out a prima facie case for discrimination by showing: (1) she engaged in protected conduct, (2) she was thereafter subjected to an adverse employment action, and (3) the adverse employment action was taken in response to her protected conduct.  *Hockman v. Westward Comms., L.L.C.*, 407 F.3d 317, 330 (5th Cir. 2004).  Then the burden shifts to the "defendant to demonstrate a legitimate nondiscriminatory purpose for the employment action." *Pineda*, 360 F.3d at 486.  If the defendant meets this burden, the plaintiff must prove "that the employer's stated reason for the adverse action was merely a pretext for the real, discriminatory purpose." *Id*.  When a case has been fully tried on the merits, "the adequacy of a party's showing at any particular stage of the *McDonnell Douglas* ritual is of no consequence. [A court is] simply to determine whether the record contains evidence upon the basis of which a reasonable trier of fact could have concluded as the jury did." *Elliott*, 714 F.2d at 564.

### *Analysis*

The College claims that the evidence put forth by Mumphrey is legally insufficient to support the verdict returned by the jury.  Applying the standards set forth above, Mumphrey presented enough evidence to make out her prima facie case through her subjective testimony regarding Dr. Hawkins's, President of Texas College, hostile attitude towards her.  The College responded with evidence of a legitimate, non-discriminatory reason for the termination—that it terminated Mumphrey due to a reduction in force.  In addition to testimony from Hawkins as to the motive for terminating Mumphrey, the College introduced the following evidence: a chart of employee terminations showing that the College terminated seventeen employees during 2003-04 due to reduction in force, correspondence demonstrating the College's financial condition throughout the

4

year, the resignations of Moore and Rayford due to the institution's financial instability, evidence

that the Southern Association of Colleges and Schools ("SACS") put the College on probationary

status in December 2003 due in part to financial instability, and the reductions in force that

historically and regularly occur in the spring.  Because the College introduced evidence which, if

true, would permit the conclusion that Mumphrey's termination was non-retaliatory, the burden then

shifted to Mumphrey to provide sufficient evidence to demonstrate that the reduction in force was

merely a pretext.

To satisfy this burden, Mumphrey must offer "some evidence . . . that permits the jury to

infer that the proffered explanation was a pretext for discrimination.  The trier of fact may not

simply choose to disbelieve the employer's explanation in the absence of any evidence showing why

it should do so."  *Id*. (quoting *Swanson v. Gen. Servs. Admin*., 110 F.3d 1180, 1185 (5th Cir.1997)).

To support her claim, Mumphrey called three witnesses: herself, Bridget Moore, her

supervisor, and Dr. Hawkins, as an adverse witness.  Mumphrey testified as to her subjective

perception of Hawkins's hostile attitude towards her, but did not provide any supporting evidence

through corroborative testimony or otherwise.  Hawkins testified that his attitude toward Mumphrey

did not change as a result of her complaint against Matthews.  Bridget Moore did not recall any

complaints by Mumphrey about her work environment after Matthews was terminated.  Moore

further testified that everyone involved in the process treated Mumphrey with respect and dignity

during the time period.

In addition, the College's witnesses, including Trish Rayford, Director of Human Resources;

Jacqueline Paddio, Dean of Students;  and Dorota Miller, Mumphrey's co-worker, all testified that

they observed no changes in Hawkins's attitude toward Mumphrey after she filed her complaint.

5

Matthews also testified that Hawkins never showed him any favoritism and that Hawkins assured Matthews that he intended to act in accordance with the committee's recommendations concerning his termination.   Every witness except Mumphrey indicated that Hawkins's conduct toward Mumphrey did not change as a result of Mumphrey's complaint against Matthews.

Mumphrey also introduced certain exhibits including an advertisement for the position of Director of Public Relations/Executive Assistant to the President and a letter in support of Mumphrey from Moore to Hawkins after Hawkins sought to terminate Mumphrey.  With respect to the advertisement, Mumphrey argued that if the College needed a reduction in force, it would not have sought a replacement for her position through an advertisement.  The evidence demonstrated, and Mumphrey now concedes, that this advertisement was for a replacement for Bridget Moore's position, which required a Master's degree and commensurate experience.  Moore resigned before Mumphrey was terminated, and there was no evidence at trial that Moore's position was ever selected as part of the College's reduction in force.  Therefore, the advertisement did not contradict the College's reasons behind terminating Mumphrey's position as part of a reduction in force.  The evidence further demonstrated that the College would customarily run these types of advertisements in the summer with no guarantees that the position would be filled until the following fall when the College determined the amount of grant money it would receive.

In addition, Mumphrey argued that Moore's letter to Hawkins, written after Hawkins suggested terminating Mumphrey, demonstrated that Hawkins had ill feelings toward Mumphrey because she filed a complaint against Matthews.  However, Moore wrote the letter a month before Mumphrey filed her complaint against Matthews.  Therefore, the letter could not be evidence of a retaliation by Hawkins because Mumphrey had not yet filed a complaint.  In addition, Mumphrey

6

herself testified that this letter was triggered by Hawkins's belief that Mumphrey was saying derogatory things about Moore and the department where she worked.

Essentially, the only evidence the jury had to support the retaliation claim against Mumphrey was Mumphrey's own subjective belief that Hawkins treated her differently and fired her in retaliation for filing a complaint against Matthews.  This evidence is legally insufficient for a reasonable jury to conclude that the College's stated reason for terminating Mumphrey was merely a pretext.  Accordingly, the College's motion is **GRANTED**.

## MOTION FOR ATTORNEYS' FEES

Mumphrey asks the Court to award attorneys' fees authorized by Rule 54(d) of the Federal Rules of Civil Procedure in the amount of $95,569.70.  In addition, Mumphrey relies on 42 U.S.C. § 2000e-5(k), which states:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

While it is true that the Court, in its discretion, can award attorneys' fees, the party must prevail, such that she "obtain[s] at least some relief on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992).  In light of the Court's ruling on Defendant's renewed motion for judgment as a matter of law, Mumphrey has failed to prevail in this case and is therefore not entitled to attorneys' fees.  Accordingly, the motion is **DENIED**

## CONCLUSION

Because the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict, the Court **GRANTS** Defendant's renewed motion for judgment

7

as a matter of law.   Accordingly, Plaintiff is not entitled to attorneys' fees because she did not prevail on the merits of the case.   Thus Plaintiff's motion is **DENIED**.

 **So ORDERED and SIGNED this 23rd day of January, 2007.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**